# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

DEMETRIUS DELANO CAMPBELL, :

    Plaintiff, :

vs. : CA 17-0426-C

NANCY A. BERRYHILL, :
Acting Commissioner of Social Security,
    :
    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claims for a period of disability, disability insurance benefits, and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 27 & 28 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.")). Upon consideration of the administrative record, Plaintiff's brief, the Commissioner's brief, and the arguments of counsel at the September 19, 2018 hearing before the Court, it is determined that the Commissioner's decision denying

benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

## I. Procedural Background

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income on or about August 5, 2014, alleging disability beginning on July 3, 2014. (*See* Tr. 197-209.) Campbell's claims were initially denied on January 5, 2015 (Tr. 138-39; *see also* Tr. 140-46) and, following Plaintiff's January 22, 2015 written request for a hearing before an Administrative Law Judge ("ALJ") (*see* Tr. 149-50), a hearing was conducted before an ALJ on June 8, 2016 (Tr. 180-98). On September 15, 2016, the ALJ issued a decision finding that the claimant was not disabled and, therefore, not entitled to a period of disability, disability insurance benefits, or supplemental security income. (Tr. 62-73.) More specifically, the ALJ proceeded to the fifth step of the five-step sequential evaluation process and determined that Campbell retains the residual functional capacity to perform medium work and, more specifically, those light jobs identified by the vocational expert ("VE") during the administrative hearing (*compare id.* at 67-73 *with* Tr. 94-95). On November 14, 2016, the Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council (Tr. 195); the Appeals Council denied Campbell's request for review on August 8, 2017 (Tr. 1-4). Thus, the hearing decision became the final decision of the Commissioner of Social Security.

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 27 & 28 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

Plaintiff alleges disability due to diabetes mellitus with associated complications, peripheral neuropathy, proteinuria, stroke syndrome, and hypertension. The ALJ made the following relevant findings:

> **3. The claimant has the following severe impairments: diabetes with proteinuria, neuropathy, hypertension, obesity, and history of cerebrovascular accident with right hemi-sensory loss (20 CFR 404.1520(c) and 416.920(c)).**
>
> . . .
>
> **4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**
>
> . . .
>
> **5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he would be able to stand two hours at a time or two hours total in an eight-hour workday, and walk two hours at a time or two hours total in an eight-hour workday. He would never be able to climb ladders, ropes or scaffolds. He would be able to occasionally climb ramps and stairs as well as occasionally balance, stoop, kneel, crouch, and crawl. He would be able to perform frequent operation of foot controls and could tolerate occasional exposure to unprotected heights, moving mechanical parts, dust, fumes, odors, gases, extreme heat, and extreme cold. He could tolerate frequent exposure to humidity, wetness, and vibration, and could frequently operate motor vehicles.**
>
> . . . . . .
>
> **6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**
>
> . . .
>
> **7. The claimant was born on November 14, 1979 and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

> **8.** The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> **9.** Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).
>
> **10.** Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).
>
> . . .
>
> **10.** The claimant has not been under a disability, as defined in the Social Security Act, from July 3, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 65, 66, 67, 71, 72 & 73).

## II. Standard of Review and Claim on Appeal

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

> to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform h[is] past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[2] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether

---
[2] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

4

the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to his past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that he cannot perform his past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given his age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206,

---

[3] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

5

1210 (11th Cir. 2005)). And, "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence." *Id.*, citing *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004).

On appeal to this Court, Campbell asserts three reasons in his brief why the Commissioner's decision to deny him benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ failed to properly weigh all the evidence of record and to provide acceptable reasons for giving particular weight to the different medical opinions; (2) the ALJ failed to properly consider all relevant applicable listings in making her step three determination; and (3) the ALJ erred in failing to consider all of his impairments and limitations and, as a result, posed an incomplete hypothetical question to the VE.[4] Because the undersigned finds that the ALJ erred to reversal with respect to Plaintiff's first assignment of error, and this error effectively eliminates any substantial support for the ALJ's RFC determination, the Court has no reason to address Campbell's other assignments of error. *See Pendley v. Heckler,* 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").

There can be little question but that "[w]eighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the process for determining disability." *Kahle v. Commissioner of Social Security,* 845 F.Supp.2d 1262,

---

[4] On January 30, 2018, Plaintiff filed a motion to remand this case, pursuant to sentence six of 42 U.S.C. § 405(g), for consideration of new and material evidence (Doc. 16), almost four months before he filed his social security brief (*see* Doc. 20 (plaintiff's brief filed on May 21, 2018)). However, in light of the contents of this Memorandum Opinion and Order, the undersigned simply finds that Plaintiff's sentence six motion to remand (Doc. 16) is **MOOT**.

1271 (M.D. Fla. 2012). In general, "the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." *McNamee v. Social Security Administration,* 164 Fed.Appx. 919, 923 (11th Cir. 2006). In assessing the medical evidence, "[t]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor[,]" *Romeo v. Commissioner of Social Security,* 686 Fed.Appx. 731, 732 (11th Cir. 2017) (citing *Winschel v. Commissioner of Social Security,* 631 F.3d 1176, 1179 (11th Cir. 2011)), and the ALJ's stated reasons must be legitimate and supported by the record, *see Tavarez v. Commissioner of Social Security,* 638 Fed.Appx. 841, 847 (11th Cir. Jan. 7, 2016) (finding that the "ALJ did not express a legitimate reason supported by the record for giving [the consulting physician's] assessment little weight."); *compare id. with Nyberg v. Commissioner of Social Security,* 179 Fed.Appx. 589, 590-591 (11th Cir. May 2, 2006) (unpublished) (recognizing that an ALJ "'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error.'").

"When weighing each medical opinion,[5] the ALJ must consider whether the doctor has examined the claimant; the doctor's relationship with the claimant; the medical evidence supporting the doctor's opinion; how consistent the doctor's opinion is with the

---

[5] "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1).

7

record as a whole; and the doctor's specialization." *Muniz v. Commissioner of Social Security,* 716 Fed.Appx. 917, 919 (11th Cir. Nov. 27, 2017), citing 20 C.F.R. § 416.927(c) (footnote added); *see also Jacks v. Commissioner, Social Security Administration,* 688 Fed.Appx. 814, 819 (11th Cir. May 23, 2017) ("The ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including whether the doctor has examined the claimant, the medical evidence and explanation supporting the doctor's opinion, and how consistent the doctor's 'opinion is with the record as a whole.'" (citations omitted)). "These factors apply to both examining and non-examining physicians." *Huntley v. Social Security Administration, Commissioner,* 683 Fed.Appx. 830, 832 (11th Cir. Mar. 29, 2017) (citations omitted).

> When considering an examining, non-treating medical opinion, "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the administrative law judge] will give that opinion. The better an explanation a source provides for an opinion, the more weight [the administrative law judge] will give that opinion." Moreover, "because nonexamining sources have no examining or treating relationship with [the applicant], the weight [the administrative law judge] will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." In addition, "the more consistent an opinion is with the record as a whole, the more weight [the administrative law judge] will give to that opinion."

*Id.* at 832-33 (internal citations omitted; footnote added). A panel of the Eleventh Circuit has determined that an "ALJ is not required to explicitly address each" of the factors set forth in § 416.927(c), *see Lawton v. Commissioner of Social Security,* 431 Fed.Appx. 830, 833 (11th Cir. June 22, 2011), and that the core inquiry is whether "good cause" exists for rejecting particular medical opinions, *see id.*

With these principles in mind, the undersigned considers whether the ALJ improperly considered the opinion evidence in this case. Here, of course, the ALJ gave

great weight to the opinion of the non-examining, reviewing medical expert, Dr. Jeffrey Weidig, significant weight to the opinion of one-time examiner Dr. Stephen Chromiak, and partial and limited weight to the various opinions of the treating physician, Dr. Rebecca Curtiss. (Tr. 70-71.) This distribution of weight to the opinion evidence is the mirror opposite that one might expect but cannot be "touched" if the ALJ states adequate reasons for that distribution of weight. In this case, the ALJ's reasons for giving great weight to the opinion of Dr. Weidig (Tr. 70 ("[H]is opinion regarding the claimant's functional limitations is highly persuasive because it is well-supported by the objective medical evidence and daily living activities previously discussed in this decision.")) and substantial weight to the opinion of Dr. Chromiak (*see id.* ("Dr. Chromiak's opinion . . . was generally consistent with the record as a whole and supported in his explanation of the medical evidence.")) are not supported by substantial evidence and, as a consequence, the ALJ's RFC determination is left without substantial support in the record. Indeed, the ALJ in this case misread and/or misconstrued the contents of Dr. Weidig's Medical Source Statement and Dr. Chromiak's evaluation report, which led her to improperly weigh these doctors' opinions.

Before looking more closely at the opinions of Drs. Weidig and Chromiak and the weight afforded those opinions by the ALJ, the Court prefaces this discussion with recognition that the responsibility for making the residual functional capacity determination rests with the ALJ, *see, e.g.,* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity."), and that in order to find the ALJ's RFC assessment supported by substantial evidence, it is not necessary for the

ALJ's assessment to be supported by the assessment of an examining or treating physician, *see, e.g., Packer v. Astrue*, 2013 WL 593497, *3 (S.D. Ala. Feb. 14, 2013) ("[N]umerous court have upheld ALJs' RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician."), *aff'd,* 542 Fed. Appx. 890 (11th Cir. Oct. 29, 2013). Here, the ALJ appears to have not so much come to her own RFC conclusion based on the entirety of the evidence of record (*see* Tr. 67 ("**After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he would be able to stand two hours at a time or two hours total in an eight-hour workday, and walk two hours at a time or two hours total in an eight-hour workday. He would never be able to climb ladders, ropes or scaffolds. He would be able to occasionally climb ramps and stairs as well as occasionally balance, stoop, kneel, crouch, and crawl. He would be able to perform frequent operation of foot controls and could tolerate occasional exposure to unprotected heights, moving mechanical parts, dust, fumes, odors, gases, extreme heat, and extreme cold. He could tolerate frequent exposure to humidity, wetness, and vibration, and could frequently operate motor vehicles.**")) but, instead, has arguably attempted to abdicate her responsibility to the non-examining medical expert (*compare id. with* Tr. 70 ("[Dr. Weidig] opined that the claimant was able to frequently lift and carry up to 20 pounds and occasionally lift and carry up to 50 pounds but never more than 50 pounds. Dr. Weidig opined that the claimant was able to sit for eight hours during an eight[-]hour workday and stand and walk for up to two hours each in an eight-hour workday. . . . He opined that the claimant did not have any manipulative

limitations and was able to frequently operate bilateral foot controls. He opined that the claimant could never climb ladders, ropes, or scaffolds, but could occasionally climb ramps and stairs as well as balance, stoop, kneel, crouch, and crawl. Dr. Weidig opined that the claimant was able to frequently operate a motor vehicle and be exposed to humidity, wetness, and vibration, but occasionally be exposed to unprotected heights, moving mechanical parts, dust, odors, fumes, pulmonary irritants, and extreme heat and cold. He opined the claimant could frequently have exposure to loud noise.") & Tr. 478-82)), who did not review the entirety of the evidence of record (*compare, e.g.,* Tr. 80 (ALJ admitted into evidence during the June 8, 2016 administrative hearing Exhibits 1F through 12F) *with* Tr. 82 (ALJ states on the record that the medical expert had for his review that medical evidence in the F section in existence on the date the request went out to the medical expert on May 11, 2016, which did not include later information received from Dr. Curtiss)). In so doing, and, in particular, in according Dr. Weidig's RFC opinions great weight and Dr. Chromiak's opinion substantial weight, the ALJ reversibly erred and here is why.

Initially, it need be recognized that Dr. Weidig never opined/determined, as ascribed to him by the ALJ (*see* Tr. 70), that Plaintiff can frequently lift and carry up to 20 pounds (*compare id. with* Tr. 478 (Dr. Weidig opined Campbell can only occasionally lift up to 20 pounds but frequently carry up to 20 pounds)). Instead, Dr. Weidig made the findings the undersigned has just attributed to him, findings which are not only inherently (and internally) inconsistent[6] but, as well, pull the rug out from under the ALJ's RFC

---

[6] Indeed, the undersigned cannot perceive how an individual who can only occasionally lift up to 20 pounds could frequently carry such weight; these findings appear counterintuitive.

11

determination that Campbell retains the RFC "**to perform a medium work as defined in 20 CFR 404.1567(c) and 416.967(c)**[.]" (Tr. 67.) In other words, since medium work involves "*frequent* lifting or carrying of objects weighing up to **25** pounds[,]" *see, e.g.,* 20 C.F.R. § 404.1567(c), and Dr. Weidig decidedly did not find that Campbell can frequently lift or carry objects weighing up to 25 pounds, and no other evidence of record reflects such ability,[7] there is simply no substantial evidence in the record supportive of the ALJ's fourth-step RFC determination.[8] Moreover, in arriving at his opinions regarding Campbell's various functional limitations, Dr. Weidig appears to have relied almost exclusively upon Dr. Chromiak's December 9, 2014 consultative examination of the Plaintiff. (*Compare* Tr. 484 (in support of, or in justification for, the RFC findings made on the Medical Source Statement, Dr. Weidig cites directly only to Exhibit 5F) *with* Tr. 369-71 (Exhibit 5F is Dr. Chromiak's December 9, 2014 consultative evaluation)). The problem

---

[7] As recognized by the ALJ (Tr. 69), in his August 20, 2014 function report Campbell stated that he could not lift more than 15 pounds (*compare id. with* Tr. 235 & 237) and, during the hearing, neither the ALJ nor counsel inquired of Plaintiff how much weight he could lift and carry (*see* Tr. 84-93).

[8] As an aside, the undersigned would also note that substantial evidence of record does not support the ALJ's RFC finding that plaintiff is "**able to perform frequent operation of foot controls**[,]" (Tr. 67) inasmuch as the ALJ wholly relied on Dr. Weidig's medical source statement for this finding (*compare id. with* Tr. 480 & 484), which statement, in turn, merely referenced evidence in the record relative to the diagnosis of peripheral neuropathy (Tr. 484), without regard to evidence in the record relative to Plaintiff's various infections/abscesses/ulcers in the lower abdominal wall and lower extremities (*see, e.g.,* Tr. 393-98 (5-day hospital stay in November of 2015 required for excisional debridement and drainage of abdominal wall soft tissue infection); Tr. 411 (on January 5, 2016, Plaintiff still had a dressing covering his right lower quadrant abdomen); Tr. 415 (on December 29, 2015, the observation is made by Dr. Curtiss that Campbell's abdominal abscess was healing but that a place on his lower extremity had turned into an ulcer); *compare id. with* Tr. 491 ("He was hospitalized in November 2015 for a severe skin infection. This stay caused him to have multiple follow-up visits along with surgery. Thereafter he had a reoccurrence."); *compare id. with* Tr. 355 (evidence from late June of 2014 that Campbell was hospitalized for 3 days with a perirectal abscess)) or Plaintiff's hearing testimony that he experiences severe pain in his legs (Tr. 86). This latter evidence, in the undersigned's estimation, would also have an impact on the frequency with which Plaintiff could operate bilateral foot controls.

with such reliance, of course, is not simply that Dr. Chromiak's consultative report does not anywhere support Dr. Weidig's opinion that Campbell can occasionally lift and carry up to 50 pounds (*see* Tr. 371 ("He likely would need a light lifting job fitting his job skills, full time would be possible if he had sitting breaks.")) but, more importantly, such reliance was improper without addressing and taking into account Dr. Chromiak's qualifying statement (way back in December of 2014) that to be successful with such "light" work, Campbell "would have to ensure good control of his diabetes and blood pressure[.]" (*Id.*) And since the evidence of record establishes that Campbell's diabetes, in particular, has never been controlled (*see, e.g.,* Tr. 393 (November 15, 2015 notation of poorly-controlled diabetes); Tr. 402 (even after being in the hospital for 3 days in mid-November 2015, Campbell's glucose level was high at 185, the reference range being 74-105); Tr. 415 (December 29, 2015 office notes reflect concern over uncontrolled blood sugars, which Plaintiff reported as running 200 in the mornings and higher in the evenings); Tr. 421 (November 4, 2015 notation of poorly-controlled type 2 diabetes); Tr. 476 (May 13, 2016 notation of both uncontrolled hypertension and diabetes) & Tr. 491 (June 17, 2016 notation of uncontrolled diabetes and floating blood pressure)), Dr. Weidig's reliance on Dr. Chromiak's report to support his RFC findings fails[9] and, as well, the ALJ was without

---

[9] In other words, the ALJ's stated reason for giving Dr. Weidig's functional limitation opinions great weight (namely, because they are supported by the objective medical evidence) is not supported in the record. Moreover, nothing about Plaintiff's daily activities (*see* Tr. 70 (also crediting Weidig's functional limitations because of Plaintiff's daily activities)), as summarized in the hearing decision (Tr. 69 (he assists his elderly father with his personal care and helps him climb up and down stairs, etc.)), tends to contradict Plaintiff's statement in his function report that he can only lift 15 pounds (*see* Tr. 235) and, indeed, the ALJ does not reject Plaintiff's testimony in this regard (Tr. 69 ("The claimant stated that he was able to lift 15 pounds . . . .")). Obviously, the putative crediting of Plaintiff's statement that he can only lift 15 pounds, *cf. Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995) ("Failure to articulate reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true."), further erodes not only the ALJ's RFC determination (of medium work) but, as well, the fifth-step determination (Continued)

13

any foundation to afford Dr. Chromiak's "light lifting job" opinion significant weight since, again, that opinion was based on a contingency—ensuring control of diabetes and hypertension—that did not come to pass.[10] Accordingly, this Court concludes that the ALJ failed to properly weigh the medical opinions in this case and, more specifically, the ALJ improperly afforded too much weight to the opinions of the non-examining, reviewing medical expert, Dr. Weidig, and the one-time examiner, Dr. Chromiak.[11] As a result, of course, the ALJ's determination that Plaintiff retains the residual functional capacity to perform medium work is not supported by substantial evidence and, just as importantly, this Court cannot affirm the ALJ's fifth-step determination that Plaintiff can perform the light jobs identified by the vocational expert during the administrative hearing (*see* Tr. 95-96) since there does not exist substantial evidence in the record that Plaintiff can perform the requirements of light work (given his poorly-controlled diabetes and his lifting restrictions). In short, the errors identified require the reversal and remand of this action to the Commissioner of Social Security for further proceedings.

## **CONCLUSION**

---

that claimant can perform those light jobs identified by the VE during the administrative hearing, since light work involves lifting up to 20 pounds at a time, *see, e.g.,* 20 C.F.R. § 1567(b).

[10] It is clear to this Court that the ALJ cherry-picked statements from the consultative physician's report to support her conclusion that his opinion was "generally consistent with the record as a whole," rather than addressing "head on" Dr. Chromiak's important "qualification" of his opinion. This was error.

[11] And, of course, the ALJ's failure to properly weigh the opinion evidence of Drs. Weidig and Chromiak tends to beg the question why the opinions of the treating physician, Dr. Curtiss, who maintained a longitudinal relationship with Plaintiff from his onset date of July 3, 2014 (Tr. 65; *compare id. with* Tr. 117 (reflecting that March 18, 2014 report on esophagogastroduodenoscopy was copied to Dr. Curtiss) & Tr. 491 (letter from Dr. Curtiss indicating that she had been Plaintiff's primary care physician since 2009)) up through a date just shy of the date of the September 15, 2016 administrative decision (Tr. 73; *compare id. with* Tr. 491 (letter from Dr. Curtiss dated June 17, 2016)), were not given more weight.

It is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 19th day of February, 2019.

s/William E. Cassady
**UNITED STATES MAGISTRATE JUDGE**